# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ALVAREZ and COLLEEN LESHER, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NBTY, INC., *et al.*,<br><br>Defendants. | Case No. 17-cv-00567-BAS-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING PARTIES' REQUESTS TO FILE SUPPLEMENTAL AUTHORITY (ECF Nos. 28, 29)**<br><br>**AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 20)** |

## I. INTRODUCTION

Plaintiffs Rosa Alvarez and Colleen Lesher bring this putative class action lawsuit against Defendants NBTY, Inc. and Nature's Bounty, Inc. alleging that Defendants misled them and similarly situated consumers by falsely representing health benefits from Defendants' biotin supplements. They claim that the labels on Defendants' biotin vitamin supplement products contain false representations in violation of California and Illinois consumer protection laws. Defendants now move to dismiss the First Amended Complaint (ECF No. 15 ("FAC")). (ECF No. 20 ("Mot.").) The Court finds this motion suitable for determination on the papers and

without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (ECF No. 20.)

Additionally, both parties filed unopposed ex parte motions for leave to file notices of supplemental authority. (ECF Nos. 28, 29.) Having reviewed these motions and the supplemental case law, the Court **GRANTS** the motions.

## II. BACKGROUND

Plaintiffs Alvarez and Lesher are individual consumers who purchased biotin vitamin supplements ("Biotin Product" or "Products") distributed by Defendants, nutritional supplement manufacturing companies. Plaintiffs allege that the representations on the Products' labels, which state that these products "support[] healthy hair, skin, and nails" and energy, constitute false advertising and violate California and Illinois consumer protection laws. (FAC ¶¶ 1, 11-15.) Specifically, Plaintiffs' FAC alleges violations of the California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, ("UCL"); the Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.*, ("CLRA"); and the Illinois Consumer Fraud and Business Practices Act, 815 ILCS §§ 502/1, *et seq.*. ("ICFA"). (*Id.* at 11-15.)

The FAC alleges the following material facts:

1. Defendants manufacture, market, sell, and distribute biotin supplements under the Nature's Bounty brand. The Products at issue are: "Biotin 5000 micrograms ["mcg"], SUPER POTENCY Biotin 5000 mcg, QUICK DISSOLVE Biotin 5000 mcg, Biotin 10,000 mcg rapid release softgels, and Biotin 10,000 mcg HEALTH & BEAUTY rapid release liquid." (FAC ¶¶ 1, 19.) The Products retail for approximately $10.00 to $25.00 per container. (*Id.* ¶ 19.)

2. The Products' labels make statements such as the Products "Support[] Healthy Hair, Skin, and Nails" and provide "Energy Support." (FAC ¶¶ 1, 21.) These

representations are false, misleading, and reasonably likely to deceive the public. (*Id.* ¶¶ 1-3, 21-22.)

  3. The Products' "mega-dose amounts are far beyond any conceivable range that would ever be beneficial" because the average healthy person is not biotin deficient and because any surplus biotin in the body is not used. (FAC ¶¶ 4, 5-8.) "Once there is sufficient biotin in the body, saturation occurs and the body just does not use this surplus biotin." (*Id.* ¶ 3.) The Institute of Medicine has set the daily intake for biotin at 30 mcg, and the U.S. population has an average daily biotin intake of 35 mcg to 75 mcg per day from their diet. (*Id.* ¶¶ 3-4.) Thus, the Products are "unneeded and . . . do not support the health of hair, skin, and nails," nor provide increased energy. (*Id.* ¶¶ 6 8.)

  4. On numerous occasions from approximately 2014 through 2015, Plaintiff Alvarez relied on the Products' representations when purchasing Defendants' Products, specifically the 10,000 mcg "HEALTH & BEAUTY rapid release liquid softgels." (FAC ¶ 15.) She purchased this product "at several stores in San Diego, California, including CVS, Walgreens and Bed, Bath and Beyond," and paid approximately $20.00 for each bottle. (*Id.* ¶ 15.) If she had known the truth about the Products, Plaintiff Alvarez would not have made these purchases. (*Id.* ¶ 15.) And she stopped purchasing the Products in August 2015 once she learned about the alleged misrepresentations. (*Id.*)

  5. Plaintiff Lesher was "exposed to, saw, and relied" on Defendants' representations in Illinois and purchased an unspecified Product at retail price. (FAC ¶ 16.) If Plaintiff Lesher had known the Products did not provide the represented health benefits, she would not have purchased the Products. (*Id.* ¶ 16.)

  Additionally, Plaintiffs seek to represent a multi-state class consisting of all consumers who purchased the Products in California, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. (FAC ¶ 23.) Alternatively, Plaintiff Alvarez seeks to represent California consumers of the

Products in a California-only class and Plaintiff Lesher seeks to represent an Illinois-only class consisting of Illinois consumers. (*Id.* ¶¶ 24-25.) Plaintiffs seek monetary and injunctive relief. (*Id.* at 15.)

On May 26, 2017, Defendants moved to dismiss Plaintiffs' claims pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). (ECF No. 20.) In their Reply to Plaintiffs' Opposition to the Motion to Dismiss, Defendants moved to dismiss Plaintiff Lesher's claims pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 25 ("Reply").)

## III. LEGAL STANDARD

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 9(b) states that when alleging fraud, a party must "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that the allegations state the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When a party does not comply with these requirements, a court must dismiss for failure to state a claim. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by

Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). Thus, "[w]hen subject matter jurisdiction is challenged under the Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008), quoting *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), abrogated on other grounds *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

A defendant may bring a Federal Rule of Civil Procedure 12(b)(2) defense if a court lacks personal jurisdiction over that defendant. When a court lacks general personal jurisdiction over a non-resident defendant, three requirements must exist for a court to exercise specific personal jurisdiction. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (listing the three prong test as (1) a non-resident defendant must purposefully direct his activities or avail himself in the forum state; (2) the claim must arise out of or relate to these forum-related activities; and (3) the exercise of jurisdiction must be reasonable). The plaintiff has the burden to establish the first two prongs while the defendant has the burden to show the third prong has not been met. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). However, a Rule 12(b)(2) defense may be waived if not timely raised by the defendant. Fed. R. Civ. Pro. 12(h); *see ArchitectureaArt, LLC v. City of San Diego*, 2016 WL 1077124, at *3 n.3 (S.D. Cal. Mar. 18, 2016).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).).

## IV. DISCUSSION

### A. Request for Judicial Notice

As an initial matter, Defendants request that the Court take judicial notice of two Institute of Medicine reports (the "IOM Reports"): a 2000 report cited by Plaintiffs in the FAC and an updated 2006 version of the same report, which Plaintiffs did not cite. (ECF No. 20-2 at Exs. 1, 2.) Plaintiffs do not oppose this motion.

The Court finds that incorporating the IOM Reports into the FAC by reference is more appropriate here than taking judicial notice of the documents. Even if a document is not attached to the complaint, it may be incorporated by reference. *See* Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[A document] may be incorporated by reference . . . if the plaintiff refers extensively to the document or if the document forms the basis of the plaintiff's claim"); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("We hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

Because Plaintiffs refer extensively to the 2000 IOM Report in the FAC, and because neither party contests the authenticity of either report, the Court will incorporate the IOM Reports into the FAC by reference.

### B. Lack Of Personal Jurisdiction

For the first time in its Reply to Plaintiffs' Opposition to the Motion to Dismiss, Defendants argue that this Court lacks specific personal jurisdiction over Defendants for the claims alleged by Plaintiff Lesher, a named class representative. (Reply at 7-8 (noting that neither party alleges that the Court has general personal jurisdiction over the non-resident Defendants).) Defendants allege they lack the requisite contacts with California for specific jurisdiction relating to these claims because Plaintiff Lesher is a "[n]onresident consumer[] who did not purchase, ingest, or become injured by the Biotin Products in California." (*Id.* at 8.) Defendants cite to the recently decided *Bristol-Myers Squib v. Superior Court of California*, 582 U.S. ___ (2017), 137 S. Ct. 1773 (2017) ("*Bristol-Myers*") to support their argument. (*Id.* at 7-8.) In the supplemental briefing requested by the Court, Defendants argue that their failure to include a lack of personal jurisdiction defense in their initial motion is excusable because this defense was unavailable until the *Bristol-Myers* decision created new law. *Bristol-Myers* was argued on April 25, 2017 and decided on June 19, 2017. In between those dates, Defendants filed their initial Motion to Dismiss on May 26, 2017, and they filed their Reply after the decision on July 17, 2017.

In its supplemental briefing, Plaintiff Lesher argues that, as an initial matter, Defendants waived their right to raise a lack of personal jurisdiction defense by not asserting it in their initial briefing.[1] Plaintiff Lesher states that, even though *Bristol-Myers* was decided after Defendants' Motion to Dismiss was filed, this defense was

---

[1] Throughout their supplemental briefing, Plaintiff Lesher includes argument relating the Court's personal jurisdiction over Defendants for claims asserted by Plaintiff Alvarez and the related multi-state class members. (*See, e.g.*, ECF No. 31 at 2, 3-4, 5.) However, Defendants only raise a lack of personal jurisdiction defense for claims asserted by Plaintiff Lesher (Reply at 7-8 ("[T]his Court lacks personal jurisdiction over any claims brought by Plaintiff Lesher, an out-of-state plaintiff, and should dismiss her claims.")), and the Court only ordered briefing related to this subset of claims (ECF No. 30). Accordingly, the Court will not consider these additional arguments.

available to Defendants at the time they filed their motion because *Bristol-Myers* does not affect this case. (*Id.* at 2-4.)

Under Federal Rule of Civil Procedure 12(h), it is black letter law that a defendant waives a lack of personal jurisdiction defense when it fails to raise this defense in an initial motion to dismiss. Fed. R. Civ. Pro. 12(h)(1); *see also Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1983) ("[Rule 12(h)(1)] provide[s] a strict waiver rule with respect to [the lack of personal jurisdiction] defense. . . . It is clear under this rule that defendants wishing to raise [this] defense[] must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading."). Accordingly, raising this defense in a reply to an opposition to a motion to dismiss does not cure this deficiency; instead, the defense raised in a reply is deemed waived. *See United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived); *ArchitectureaArt, LLC v. City of San Diego*, 2016 WL 1077124, at *3 n.3 (S.D. Cal. Mar. 18, 2016) (finding that defendants waived various arguments not mentioned in its initial Motion to Dismiss, but instead raised in its Reply). An exception to this strict rule is when such a defense was unavailable to defendants at the time they filed their initial motion. *See* Fed. R. Civ. Pro. 12(g); *Glater*, 712 F.2d at 738.

For the reasons below, the Court finds a lack of personal jurisdiction defense was available to Defendants when they filed their initial briefing.[2] Accordingly, Defendants waived this defense when they failed to include it in their initial motion.

---

[2] The Court does not dispute that exceptions can apply to the black letter law regarding waiver, but the Court finds the cases cited by Defendants regarding waiver (ECF No. 34 at 1) are distinguishable from this case or support that the defense was waived. *See Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (finding recent case law "overruled precedent" and that any earlier personal jurisdiction defense "would have been directly contrary to controlling precedent"); *Glater*, 712 F.2d at 738 (finding a lack of personal jurisdiction defense was originally unavailable based on insufficient factual allegations in the complaint); *Ridgewood Assocs., Inc. v. Trumpower*, No. 06-cv-1376 LKK/GGH, 2006 WL 3147439, at *3 (E.D. Cal. Oct. 31, 2006) (holding that defendant did waive a lack of personal jurisdiction defense because he failed to raise it in his first defensive action, and including inapplicable analysis on non-waiver relating to a venue transfer).

### 1. Applicable Law Was Well Settled At Time Of Filing.

First, a lack of personal jurisdiction defense was always available to Defendants because it is well settled law that a defendant can challenge personal jurisdiction relating to each named plaintiff in a class action. *See Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001) (finding that "it is by now well settled that [personal jurisdiction] requirements to suit must be satisfied for *each and every named plaintiff* for the suit to go forward" as well "each and every named *defendant* must meet jurisdiction and venue criteria") (emphasis in original)). In fact, when Defendants make this argument in their Reply, they cite to cases decided as early at 1978:

> [P]ersonal jurisdiction must be obtained over class representatives in a putative class action. *Brailsford v. Jackson Hewitt Inc.*, No. C 06 00700 CW, 2007 WL 1302978, at *1 (N.D. Cal. May 3, 2007); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 291 (N.D. Cal. 1978).

(Reply at 8.) It is difficult to reconcile Defendants' argument that this defense was unavailable to them before the *Bristol-Myers* decision when they cite to case law that provides otherwise.

Moreover, in their supplemental briefing, Defendants discuss two cases to support their argument that a Rule 12(b)(2) defense was unavailable prior to the *Bristol-Myers* decision, but these cases undercut Defendants' position. (ECF No. 34 at 2-3.) In both cases, the defendants included personal jurisdiction defenses in their initial briefs filed months before the *Bristol-Myers* decision. *See* Memorandum in Support of Motion to Dismiss Second Consolidated Class Action Complaint at 4-14, *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696-BMC-GRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017), ECF No. 137 (providing ten pages of argument as to why the court lacked specific personal jurisdiction over a non-resident defendant in a class action); Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint at 22-24, *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF,

2017 WL 3838453 (N.D. Cal. Sept. 1, 2017), ECF No. 16. Thus, while those cases may have considered the *Bristol-Myers* decision, the defendants already raised (and thus did not waive) that available defense.

Additionally, neither party disputes that the facts relating to Plaintiff Lesher's claims were available at the time of Defendant's initial motion. *Cf. Glater*, 712 F.2d at 738 (finding a lack of personal jurisdiction defense was originally unavailable when plaintiff failed to adequately plead her domicile).

At bottom, as in the cases discussed above, Defendants could have included a personal jurisdiction defense in their initial motion and alerted the Court to the pending decision in *Bristol-Myers* in its motion. In light of the well settled law and clear facts in this case, the Court does not find that a lack of personal jurisdiction defense was unavailable at the time of the initial briefing.

### 2. *Bristol-Myers* Did Not Create New Applicable Law.

Second, it is not clear that *Bristol-Myers* squarely applies to the facts of this case, let alone so drastically change the landscape of applicable law as to excuse Defendants' failure to raise a lack of personal jurisdiction defense. In the eight to one *Bristol-Myers* decision, the Supreme Court held that a California state court lacked specific personal jurisdiction over the claims asserted by 592 out-of-state plaintiffs in a mass tort action with over 600 individual plaintiffs. 137 S.Ct. at 1778, 1781-82. Specifically, they found that a defendant's activities supporting personal jurisdiction over one set of claims (a non-resident defendant's in-state activities relating to the in-state plaintiffs) did not confer specific jurisdiction over the same defendant for claims related to other activities (a defendant's out-of-state activities relating to the out-of-state plaintiffs). *Id.* at 1781-82. The majority stated that this holding was a "straightforward application . . . of settled principles of personal jurisdiction" (*id.* at 1783) while only Justice Sotomayor in her dissent stated that this

holding created new law (*id.* at 1789 (Sotomayor, J., dissenting) (concluding her dissent by asserting that "[t]his is not a rule the Constitution has required before")).

Courts have recognized two main distinctions when deciding whether to apply *Bristol-Myers*: first, both the majority opinion and Justice Sotomayor's dissent make it clear that the holding left open whether the decision applied to federal courts; and second, *Bristol-Myers* applied to a mass tort action with individually named plaintiffs, and not a class action. Since the *Bristol-Myers* decision, courts have both extended and declined to extend its holding in class actions law suits in federal courts. *See, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) (finding that *Bristol-Myers* could apply to federal courts, though did not apply to class actions).

Though *Bristol-Myers* is arguably instructive to federal courts handling class actions, its holding did not create a new defense for Defendants that was not available before its decision. In this case, Defendants argue that the Court lacks personal jurisdiction over them for claims asserted by one of two *named* class representatives. As discussed above, the law on that issue is well-settled, and it differs from any new law *Bristol-Myers* may have created. The Court can see how *Bristol-Myers* may have created a new defense if Defendants asserted for the first time in their Reply that this Court lacked personal jurisdiction over the claims brought by the *unnamed* members to Plaintiff Alvarez's proposed multi-state class, i.e. Defendants' in-state activities relating to Plaintiff Alvarez cannot be used to support specific jurisdiction for claims alleged by unnamed out-of-state class members. This factual pattern also more closely resembles the cases where courts have applied *Bristol-Myers*.[3] *See*

---

[3] As discussed below, the Court notes that all of the defendants who filed their initial motions before *Bristol-Myers* was decided included a personal jurisdiction defense in their motions. *See* Defendant's Motion to Dismiss For Failure To State A Claim, *McDonnell*, 2017 WL 4864910, ECF No. 50 (filed on June 7, 2017); Defendant's Motion to Transfer Venue or for Partial Dismissal of the First Amended Complaint at 6-9, *Wenokur*, 2017 WL 4357916, ECF No. 31 (filed on April 28, 2017).

– 11 – 17cv0567

*McDonnell v. Nature's Way Prod., LLC*, No. 16-cv-5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (addressing personal jurisdiction over claims asserted by out-of-state *unnamed* class members who were included in a multi-state class represented by a resident *named* plaintiff); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165-PHX-DLR, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017) (citing to *Bristol-Myers* in a footnote to state that the court lacked personal jurisdiction for claims by out-of-state class members, not a class representative); *cf. Fitzhenry-Russell*, 2017 WL 4224723, at *4 (declining to extend *Bristol-Myers* to find a lack of personal jurisdiction over claims asserted by unnamed, non-resident class members). However, Defendants have not raised this argument in any of its briefing.

Defendants cite to a string of cases to show that courts have extended *Bristol-Myers* to class actions, but none of these cases addressed personal jurisdiction for the first time in a reply. (ECF No. 34 at 3.) In fact, all defendants raised personal jurisdiction defenses in their initial briefs, which were filed before *Bristol-Myers*. *See* Joint Memorandum of Law in Support of Foreign Defendants' Motion to Dismiss All Claims for Lack of Personal Jurisdiction & Venue, *FrontPoint Asian Event Driven Fund, L.P.*, 2017 WL 3600425, ECF No. 145 (filed on Nov. 18, 2016); Memorandum in Support of Motion to Dismiss Second Consolidated Class Action Complaint at 4-14, *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, ECF No. 137 (filed on Jan. 13, 2017); Motion to Dismiss for Lack of Personal Jurisdiction, *Spratley*, 2017 WL 4023348, ECF No. 49 (filed on Feb. 17, 2017); Defendant's Motion to Transfer Venue or for Partial Dismissal of the First Amended Complaint at 6-9, *Wenokur*, 2017 WL 4357916, ECF No. 31 (filed on April 28, 2017). While some of those cases found *Bristol-Myers* instructive, none of these cases addressed whether *Bristol-Myers* excused the failure to raise a personal jurisdiction defense.[4]

---

[4] Even after analyzing how these cases applied *Bristol-Myers*, they do not support that a new defense was created. These cases either cited *Bristol-Myers* for established law on personal jurisdiction or applied it to inapplicable facts. *See, e.g., McDonnell*, 2017 WL 4864910, at *4 (addressing personal jurisdiction in relation to

*See id.* And nothing in these cases suggests that Defendants could not have raised this defense in its initial motion, which the other defendants did.

With or without *Bristol-Myers*, Defendants could have argued that this Court lacks personal jurisdiction over non-resident Defendants for claims asserted by named out-of-state Plaintiff Lesher with out-of-state claims in a class action. Because of their failure to do so, Defendants waived this argument.

### C. Standing
#### 1. Standing for Injunctive Relief

Plaintiffs seek injunctive relief under the UCL, CLRA, and ICFA to enjoin Defendants from engaging in the alleged misrepresentations regarding the Biotin Products. (FAC ¶ 31.) Defendants contend that Plaintiffs lack standing to seek prospective injunctive relief. The Court agrees with Defendants.

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Federal courts require plaintiffs to demonstrate three elements to

---

out-of-state class members); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-cv-00165-PHX-DLR, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017) (finding a lack of personal jurisdiction for claims by out-of-state class members). In one case, a court cited to *Bristol-Myers* only once to dispute the plaintiff's erroneous use of its holding and affirmed that "the Supreme Court merely applied its 'settled principles regarding specific jurisdiction'" in *Bristol-Myers*. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263-AKH, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017). The last case that Defendants cite in this string of cases more closely mirrors the facts here. In *Spratley v. FCA US LLC*, No. 17cv0062-MAD-DEP, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017), the defendant, Chrysler, argued that the court lacked the requisite specific personal jurisdiction for the six (out of nine) named plaintiffs that resided out-of-state. This is analogous to this case where there is a mix of in-state and one out-of-state *named* plaintiffs. Still, Chrysler moved to dismiss for lack of personal jurisdiction in February 2017 (*id.* at *1), which it later supplemented four months later with the *Bristol-Myers* decision (Notice of Supplemental Authority In Support of Motion to Dismiss at 1, ECF No. 64 (June 19, 2017)). Thus, while *Bristol-Myers* supports finding a lack of personal jurisdiction, these cases do not show that a new defense was created that Defendants could have not asserted before its holding.

establish that they have "standing" to sue: (1) "injury in fact" that is "concrete and particularized" and "actual and imminent"; (2) the injury must be fairly traceable to defendant's conduct; and (3) the injury can be redressed through adjudication. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where a plaintiff seeks prospective injunctive relief, Article III has been interpreted to require plaintiff to show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A plaintiff invoking federal jurisdiction must satisfy the standing requirements of Article III even if the plaintiff only asserts state law claims. *See Birdsong v. Apple. Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009).

By their own admission, Plaintiffs face no prospective injury. Plaintiff Alvarez states that she "stopped purchasing Biotin Products . . . when she learned that it did not and could not provide the represented health benefits" (FAC ¶ 15), and both Plaintiffs allege that, had they "known the truth," they would not have purchased the product. (FAC ¶¶ 15, 16.) Instead, Plaintiffs point to a line of cases that have allowed plaintiffs to sue for injunctive relief despite lack of intent to make another purchase. *See Henderson v. Gruma*, No. 10-cv-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011).

This Court previously addressed this issue. Even after considering the policy concerns raised in *Henderson*, this Court determined that:

> As important as consumer protection may be as a policy matter, the Court cannot lower the threshold for Article III standing based on the imperatives of California's legislature. It is the Constitution and Congress that determines the jurisdiction of the federal courts, not the legislatures of the various states.

*Lucas v. Berg*, 212 F. Supp. 3d 950, 964 (S.D. Cal. 2016). Thus, as in *Lucas*, Plaintiffs do not have standing to pursue injunctive relief because there is no threat of future injury, and that relief is similarly unavailable to the proposed class.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiff's claims for injunctive relief.

### 2. Standing to Assert Claims on Behalf of Multi-State Class

Defendants argue that Plaintiffs lack standing to assert claims on behalf of a multi-state class for claims under consumer protection laws of states where Plaintiffs neither resided nor purchased the disputed product. Specifically, they argue that Plaintiff Alvarez lacks standing to assert claims on behalf of a multi-state class, and Plaintiff Lesher can only assert ICFA claims on behalf of a class of Illinois consumers who purchased the Products in Illinois. Plaintiffs argues that Plaintiff Alvarez may properly pursue claims on behalf of a multi-state class consisting of states with similar consumer protection statutes under the UCL. Plaintiffs argue further that the conflict-of-law issues raised by a multi-state class is more properly resolved on the motion for class certification. (ECF No. 24, Opp. at 19.)

While this Court recognizes that some courts find that standing is best determined at the motion to dismiss stage, the Court declines to do so here. Plaintiff Alvarez has met the threshold standing questions relating to her standing to assert her claims. Thus, this secondary standing analysis relating to Plaintiff Alvarez's standing as it relates to multi-state class is best left for class certification and after further discovery. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (holding that a facts and circumstances analysis of each claim should be "governed by the consumer protection laws of the jurisdiction in which the transaction took place" at the class certification stage); *see also Won Kyung Hwand v. Ohso Clean, Inc.*, No. 12-cv-06355, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (stating that a detailed choice-of-law analysis is most appropriate at the class certification stage after parties have engaged in discovery).

Additionally, Plaintiff Lesher only alleges ICFA claims on behalf of the Illinois-only class. (FAC at 14-15.) Any further issues with the scope of this class are likewise best left to the class certification stage. *See Mazza*, 666 F.3d at 594.

Accordingly, Defendants' motion to dismiss Plaintiffs' multi-state class claims is **DENIED**, and the Court will evaluate the multi-state class claims at the class certification stage.

### 3. Standing to Assert Claims for Products Not Purchased

Defendants argue that, because Plaintiffs only specifically allege they purchased one of the five products at issue, Plaintiffs lack standing to pursue claims for the Products that they did not purchase. (Mot. at 13-16.)

A plaintiff has standing for claims relating to products that she did not purchase if the "products are the same kind, . . . comprised of largely the same ingredients, and . . . bear[] the same alleged mislabeling." *See Hunter v. Nature's Way Prods., LLC*, No. 16-cv-532-WQH-BLM, 2016 WL 4262188, at *14 (S.D. Cal. Aug. 12, 2016) (quoting *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1140-41 (N.D. Cal. 2013)). In other words, a plaintiff has standing when the products and alleged misrepresentations are substantially similar. *Id.* Similarly, in *Vasic v. Patenthealth, L.L.C.*, 171 F.Supp. 3d. 1034, 1044 (S.D. Cal. 2016), this Court found that when products share the same primary active ingredients, they are substantially similar for purposes of standing to assert claims. *Compare id. with Dysthe v. Basic Research LLC*, No. 09-8013 AG (SSx), 2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011) (finding plaintiffs lacked standing for claims involving products with "significant differences" from the products they purchased).

Here, Plaintiffs allege that each of the Biotin Products—whether the 5,000 mcg or the 10,000 mcg bottle—contain the same sole active ingredient and include the same claim of false or misleading advertising. (FAC ¶¶ 2, 3-10, 15-16.) Thus,

because the products and misrepresentations are sufficiently similar, the Court finds that Plaintiffs have standing to assert claims for the various alleged products.

Accordingly, the Court **DENIES** Defendants' motion to dismiss as it pertains to Products not purchased by Plaintiffs.

### D. Lack-of-Substantiation Verses Actual Falsity Claims

Defendants argue that Plaintiffs fail to allege actually false claims, and rather Plaintiffs only allege lack of substantiation claims. Defendants state that these allegations are insufficient to support Plaintiffs' UCL, CLRA, or ICFA claims, and thus they must be dismissed. Defendants further argue that, even if the Court considers Plaintiffs' use of the IOM Reports, these reports contain insufficient information and should not be deemed "scientific literature" that sufficiently support a falsity claim.

Private litigants must allege actual falsity or misrepresentation for their UCL, CLRA, and ICFA[5] claims. *See* Cal. Bus. ¶ Prof. Code § 17200; *Kwan v. SanMedica Int'l, LLC*, 854 F.3d 1088, 1095-96 (9th Cir. 2017); *cf. Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) (finding only prosecuting authorities have the power to request advertisers to substantiate advertising claims). Courts have noted that there is an intuitive difference "between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved." *Eckler v. Wal-Mart Stores*, *Inc.*, No. 12-cv-727-LAB-

---

[5] The ICFA requires a similar standard as the UCL regarding pleading actually false claims. *See Spector v. Mondelez Int'l, Inc.*, No. 15C4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017) (stating that a plaintiff must plead a "*reasonable*, as opposed to a *speculative*, inference" that advertisements are actually false) (emphasis in original). Additionally, if a plaintiff has successfully stated a claim under the fraudulent prong of the UCL, plaintiff has also sufficiently stated a claim under the CLRA. *See Elias v. Hewlett-Packard Co.*, 903 F.Supp 2d 843, 854 (N.D. Cal. 2012) (noting that the CLRA and the fraudulent prong of the UCL apply the same standard and that "courts often analyze these [two] statutes together.").

MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012) (concluding that studies "debunk[ing]" the purported health claims at issue support a claim of actual falsity). The Ninth Circuit recently affirmed that plaintiffs must plead actual falsity, and found that plaintiffs could do so by citing to "testing, scientific literature, or anecdotal evidence." *Kwan*, 854 F.3d at 1096-98 (quoting *King Bio Pharm., Inc.*, 107 Cal. App. 4th at 1348). Additionally, *Kwan* find that plaintiffs could use this type of evidence to sufficiently show that an advertised claim was impossible to achieve, and thus false. *Id.* at 1091-92, 1096-98.

Here, Plaintiffs allege that the Products' representations are actually false because the majority of people cannot use an excessive amount of biotin, prohibiting the Products from providing any benefits. Though the 2000 IOM Report cited by Plaintiffs does not state specifically that the body can only absorb 30 mcg of biotin, Plaintiffs argue that the report supports their allegations by showing that the body does not require more than 30 mcg of biotin per day, let alone the 5,000 to 10,000 mcg of biotin provided in the Biotin Products. Thus, Plaintiffs allege that scientific principles in the 2000 IOM Report supports that it is medically impossible to achieve the Products' advertised health benefits, and are, in turn, false.

The Court finds that Plaintiffs have adequately pled that the advertised claims are actually false. While more scientific evidence in support of this claim may be necessary going forward, the Court finds that the allegations are sufficient to survive the motion to dismiss stage, and **DENIES** the motion to dismiss on this ground.

### E. Sufficient Pleading for Fraud Claims

Defendants argue that Plaintiffs fail to plead their fraud claims with sufficient particularity, especially for Plaintiff Lesher. (Reply at 9.) Plaintiffs dispute this argument and state both Plaintiffs sufficiently plead their claims.

UCL, CLRA, and ICFA claims of fraudulent misrepresentation in labelling sound in fraud and require the heightened pleading standard under Federal Rule of

Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (stating heightened pleading applies to UCL and CLRA claims); *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (finding the heightened Rule 9(b) pleading standard applies to ICFA claims). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," and fraud claims must include the "who, what, when, where, and how" of the fraudulent activity. *See Kearns*, 567 F.3d at 1125; *see also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F.Supp. 2d 1112, 1124 (C.D. Cal. 2009) (holding that plaintiff adequately pled false advertising claims with particularity when the complaint alleged how the drink was labelled and what was misleading about the label).

The Court finds that Plaintiff Alvarez has adequately pled her fraud claims, but Plaintiff Lesher has not. Plaintiff Alvarez sufficiently pleads "who, what, when, where, and how" elements of the fraud by alleging the specific product she purchased and specific product label she relied on, listing at least three stores in San Diego County where she bought the products, providing a sufficient time frame for when she made these purchases (including the month and year when she learned of the allegedly false information), submitting examples and pictures of the labels she saw, explaining what was misleading about the labels, and alleging she would not have purchased the products had they known the truth. While all of this information may not be necessary, it sufficiently provides enough information for Defendants to defend this fraud claim. *See Concha v. London,* 62 F.3d 1493, 1502 (9th Cir.1995) ("Without such specificity, defendants in [fraud] cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing."). Conversely, Plaintiff Lesher only provides a few vague factual allegations relating to her purchase of the Products. She states she resided in St. Charles, IL during "the relevant time period" (but does not provide these dates); was "exposed to, saw, and relied on" the representations on "the Product label in Illinois" (but does not provide a county, city, and/or store name); and

purchased the Product (but does not provide any information about where or how she purchased the Product). Importantly, nowhere in the FAC does Plaintiff Lesher identify which "Product" label she saw or which "Product" she purchased. This type of pleading is insufficient, and fails to provide the "who, what, when, where, and how" elements of Plaintiff Lesher's fraud claims. *See Kearns*, 567 F.3d at 1126 (dismissing fraud claims when plaintiff failed to allege the particular circumstances surrounding his fraud claims); *Camasta*, 761 F.3d at 738 ("By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." (quoting *Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.1999)).

Accordingly, the Court **DENIES** the motion to dismiss on this ground for Plaintiff Alvarez's claims and **GRANTS WITH LEAVE TO AMEND** the motion to dismiss on this ground for Plaintiff Lesher's claims.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Specifically, the Court **GRANTS** the motion with regard to the claims for prospective injunctive relief, **GRANTS WITH LEAVE TO AMEND** Plaintiff Lesher's claims, and **DENIES** the motion with regard to the remaining claims. Accordingly, Plaintiffs may file a Second Amended Complaint that only provides additional factual allegations relating to Plaintiff Lesher's purchases of the Products in support of her fraud claims **no later than December 20, 2017**.

**IT IS SO ORDERED.**

**DATED: December 6, 2017**

Hon. Cynthia Bashant
United States District Judge