# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ALVAREZ, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NBTY, INC., *et al.*,<br><br>Defendants. | Case No. 17-cv-00567-BAS-BGS<br><br>**ORDER (1) DENYING MOTION TO STRIKE EXPERT REPORT OF JOSEPH J. EGAN;**<br><br>**AND**<br><br>**(2) DENYING MOTION TO STRIKE OPINIONS AND TESTIMONY OF DR. BARRY WOLF**<br><br>**[ECF Nos. 65, 66]** |

Currently pending before the Court are a: (1) Motion for Summary Judgment by Defendants NBTY, Inc. and Nature's Bounty, Inc.; and (2) Motion to Certify Class by Plaintiff Rosa Alvarez. Before the Court may resolve these motions, however, the Court must resolve Defendants' two Motions to Strike. (ECF Nos. 65, 66.) Defendants move to strike the report of Plaintiff's expert Joseph J. Egan, ("Mtn. Strike Egan," ECF No. 65), and the opinions and testimony of Plaintiff's expert Dr. Barry Wolf, ("Mtn. Strike Wolf," ECF No. 66.) Plaintiff filed responses in opposition to both Motions, ("Egan Opp'n," ECF No. 72; "Wolf Opp'n," ECF No. 73); and Defendants filed replies in support of both Motions, (ECF Nos. 77, 78).

The Court finds the Motions suitable for determination on the papers

submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, this Court **DENIES** both Motions to Strike**.**

## I. BACKGROUND

Defendants manufacture, market, sell, and distribute biotin supplements under the Nature's Bounty brand. (Second Amended Complaint, "SAC," ECF No. 38, ¶ 1.) The products are: Biotin 5000 mcg, SUPER POTENCY Biotin 5000 mcg, QUICK DISSOLVE Biotin 5000 mcg, Biotin 10,000 mcg rapid release softgels, and Biotin 10,000 mcg HEALTH & BEAUTY rapid release liquid softgels (hereinafter, "the Products"). (*Id.*)

In 2014 and 2015, Plaintiff Rosa Alvarez purchased the 10,000 mcg HEALTH & BEAUTY rapid release liquid softgels product. (*Id.* ¶ 15). Alvarez purchased the product "in reliance on Defendants' health benefit representations." (*Id.*) The Products' labels state the Products "Support[] Healthy Hair, Skin, and Nails" and provide "Energy Support." (*Id.* ¶ 20.) Plaintiff claims these representations are false, misleading, and reasonably likely to deceive the public. She brings claims for fraudulent business acts and practice; and violations of the Consumers Legal Remedies Act.

In sum, Plaintiff claims Defendants' representations are false because the biotin supplements do not support healthy hair, skin, and nails. (*Id.* ¶ 9.) "The human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin. Once there is sufficient biotin in the body, saturation occurs and the body just does not use this surplus biotin." (*Id.* ¶ 3.) The average person ingests more than sufficient biotin from their normal daily diet. (*Id.*) "Thus, biotin is not a 'more is better' substance, nor is more biotin needed from supplementation to complete these daily enzymatic functions." (*Id.* ¶ 5.) "[O]nce one consumes a sufficient amount of biotin, which is easily met by the general population in their everyday diets, the remainder becomes functionally superfluous and does not convey any additional health benefits." (*Id.*)

## II. ANALYSIS

Defendants move to strike the expert report of Mr. Egan and the opinions and testimony of Dr. Wolf.

### A. <u>Joseph Egan</u>

Defendants claim Plaintiff improperly submitted Mr. Egan's report as a "rebuttal" report because it offers "for the first time various damages models, charts and total calculations." (Mtn. Strike Egan 1.) Defendants move to strike the rebuttal report under Rule 37(c)(1).[1]

#### 1. Legal Standard

Expert rebuttal reports must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in that other party's expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). The phrase "same subject matter" should be read narrowly because a broad reading that "encompass[es] *any* possible topic that *relates* to the subject matter at issue[ ] will blur the distinction between 'affirmative expert' and 'rebuttal expert.'" *Vu v. McNeil–PPC, Inc.*, No. CV 09–1656, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010). "Accordingly, a careful analysis of each of the Plaintiff's expert[']s proposed testimony and the corresponding [Defendant's] expert[']s rebuttal testimony is required to determine if the rebuttal testimony is proper." *Hellman–Blumberg v. Univ. of Pac.*, No. 12–cv–00286, 2013 WL 3422699, at *2 (E.D. Cal. July 8, 2013).

If a disclosed rebuttal expert is not proper, "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

---

[1] Plaintiff argues Defendants' Motion is procedurally improper because it should have been filed in front of Judge Skomal and did not follow his chambers rules. (Egan Opp'n 6–7.) Because the Motion to Strike is related to the pending motion for summary judgment and motion for class certification, it has been referred to this Court and Judge Skomal's rules do not apply.

1101, 1106 (9th Cir.2001)). Rule 37(c)(1)'s exclusion sanction is mandatory unless failure to disclosure is substantially justified or harmless. Fed. R. Civ. Pro. 37(c)(1).

### 2. Analysis

As background, the Parties exchanged initial expert designations and reports on June 1, 2018. (Mtn. Strike Egan 2.) Plaintiff designated Dr. Barry Wolf, and Defendants designated Dr. Donald Mock (a science expert) and Dr. Jesse David (an economist). (*Id.* at 2.) Dr. David provided a report discussing a damages calculation. (*Id.*) Dr. David opines that a consumer's damages due to a seller's misrepresentations are calculated as "the difference between the actual price paid by the consumer and the actual value received." ("David Report," ECF No. 65-5, ¶ 11.) Therefore, if "misrepresentations caused retail prices to be higher than what they otherwise would have been, then a particular class member's damages would equal the difference between the price she actually paid for the product and the price that would have occurred in the but-for world." (*Id.*) In interpreting Plaintiff's Complaint, Dr. David opines that Plaintiff is seeking a full refund of the retail price of the Products. (*Id.* ¶ 12.) Dr. David opines that a full refund is not an appropriate class-wide remedy because the market value of the Products "in the absence of the alleged misrepresentations" is not zero; i.e., at least some consumers got some benefit from the supplements. (*Id.* ¶ 14.) Dr. David concludes that damages "cannot be measured on a class-wide basis using common evidence." (*Id.* ¶ 17.)

Plaintiff then designated Mr. Egan, a damages expert. Mr. Egan's report is titled "Rebuttal Expert Report of Joseph J. Egan." Mr. Egan opines that Dr. David's assertion that "a full refund is not an appropriate class-wide remedy" is erroneous. ("Egan Report," Exhibit B of ECF No. 82-1.) It is Egan's opinion that "common methods and formulas can be used to estimate damages in this matter." (*Id.*) Mr. Egan provides "two basic methods to estimate class-wide damages using common methodologies and formulas: the retail method and the wholesale method." (*Id.* at 27.) Egan's inclusion of two detailed methods to calculate damages, for the first time

through a rebuttal report, is why Defendants protest.

In the broad sense, Mr. Egan's report is of course responding to Dr. David's report: Dr. David opines that damages cannot be measured on a class-wide basis using common evidence, and Mr. Egan disagrees and provides two methods which, in his opinion, do so. The ways he provides are elaborations of what Plaintiff's theory has been all along: calculate damages by multiplying the price of the product times the number of products sold.[2] Mr. Egan also opines that if certain purchases "should be excluded from the class aggregate damages calculation, the aggregate damages amount need only be reduced by 0.00138%, or at most 1%." (Egan Report 16.)[3] This is a response to Dr. David's opinion that those who "do derive some benefit from the biotin supplements . . . would not have suffered damages equal to the full price of the products" and there needs to be some method to exclude those consumers from receiving damages. (David Report ¶ 15.) Mr. Egan's report is in sum a response to Dr. David's report. The issue therefore is whether Mr. Egan's report is "narrowly tailored" to the subject matter of Dr. David's report. *See Hellmann-Blumberg*, 2013 WL 3422699, at *2.

Before designating Mr. Egan, Plaintiff had not yet designated an expert to provide a methodology in which to calculate damages. Plaintiff argues she did not originally need to present a damages theory because "the case involves a straight-forward, full refund damages theory such that all Plaintiff needs at trial is someone to perform the summary of the arithmetic calculations based upon verified retail sales data." (Egan Opp'n 10, 12–13 (citing Plaintiff's motion for class certification).)

---

[2] The retail method is performed "by multiplying the total quantity of the various Biotin Products shipped to each state as reported by Defendants by an average retail price of each of the Biotin Products." (Egan Report 8.) The wholesale method "uses the wholesale sales information for the various Defendants' Biotin Products to calculate the class damages, rather than the average retail price actually paid by consumers." (*Id.* at 13.) The wholesale method results in an understated estimate because business retailers usually sell products at above wholesale price. (*Id.*)

[3] This number comes from Dr. Wolf, who opines that only 0.000138 percent of the U.S. population have a biotin deficiency and are the only ones who would benefit from Defendants' biotin supplements. ("Wolf Report," ECFR No. 66-3, ¶ 26.)

Plaintiff states she had thus satisfied her Rule 23(b)(3) burden. (*Id.* at 11.) But when Dr. David opined that class-wide damages were not possible, Mr. Egan rebutted this with arithmetic calculations. (*Id.* at 10.)

Indeed, a party's rebuttal expert report "is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-4236-BLF, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016) (internal quotation marks omitted). But "offering a different, purportedly better methodology is a proper way to rebut the methodology of someone else." *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. 14-341 JVS, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016). The Court finds Mr. Egan's opinion to be a proper rebuttal opinion; he is not changing Plaintiff's method in calculating damages but is responding to the contention that there is no methodology to calculate damages on a class-wide basis. Rebuttal testimony is permitted to "question the assumptions and methods" of an opposing expert but may not present "new facts" or "novel argument." *LaFlamme v. Safeway, Inc.*, No. 09-cv-514-ECR-VPC, 2010 WL 3522378, at *8 (D. Nev. Sept 2, 2010). There are no new facts or argument in Egan's report—only new, responsive methods. Finally, the fact that the damages calculation could also be used in Plaintiff's case in chief "does not necessarily bar its admission by a rebuttal expert." *Hellmann-Blumberg*, 2013 WL 3422699, at *5. Just because Plaintiff could have designated Mr. Egan as an expert in the first place does not mean the evidence may not be introduced as rebuttal evidence if it refutes the subject matter of Defendants' expert witness testimony. *Id.*

Accordingly, because Mr. Egan's report is a proper rebuttal opinion, the Court **DENIES** Defendants' Motion to Strike Mr. Egan's expert report.

B. <u>Barry Wolf</u>

Defendants move to strike Dr. Wolf's opinion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311, 1318 (9th Cir. 1995).

### 1. Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014). Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, expert testimony must be both relevant and reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 462 (9th Cir. 2014). Relevancy simply requires that "[t]he evidence . . . logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Reliability requires that an expert's testimony "have a reliable basis in the knowledge and experience of his discipline." *Estate of Barabin*, 740 F.3d at 462 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999)).

Courts are not concerned with the "correctness of the expert's conclusions but the soundness of his [or her] methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert*, 43 F. 3d at 1318). "For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one." *Id.* at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*; *see also Daubert*, 509 U.S. at 595–96.

The duty falls upon the district court to act "in a gatekeeping role, to assess whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Ollier*, 768 F.3d at 860 (quoting *Daubert*, 509 U.S. at 592–93) (internal quotation marks omitted). The party seeking to offer the testimony bears the burden of establishing its admissibility. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014) (citations omitted).

### 2. Analysis

Dr. Wolf opines that "Defendants' biotin products do not provide any benefits to the general population and, thus, they do not help support healthy hair, skin and nails, or energy or energy production." ("Wolf Report," ECF No. 66-3, ¶ 11.) While large doses of biotin benefit "an infinitesimally small number of persons who have one of three inherited metabolic, biotin-responsive disorders," they are "superfluous and worthless for all other individuals" because of "the metabolic characteristics of biotin, its availability from most food sources, and the finite needs of the human body for biotin." (*Id.* ¶ 12.)

Defendants do not challenge the expert qualifications of Dr. Wolf or the relevancy of his opinions.[4] Defendants only challenge the reliability of his testimony. Defendants argue Dr. Wolf in the "best case scenario is to cast doubt on the science cited by Defendants." (Mtn Strike Wolf 3.) Defendants argue Dr. Wolf's expert testimony should be excluded because "science has yet to answer the question posed by the Plaintiff." (*Id.* at 6 (citing, *e.g.*, *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1178 (E.D. Wash. 2009)). Defendants argue "[w]hile [Dr. Wolf] may sincerely believe that biotin supplements do not benefit anyone in what he defines as the general population, he has admitted that science has yet to answer the question

---

[4] There is no question that Dr. Wolf's opinion testimony is relevant under *Daubert* because it "logically advance[s] a material aspect" of Plaintiff's case. *See Estate of Barabin*, 740 F.3d at 463. Plaintiff's entire theory of the case is that biotin supplements are unnecessary.

either way." (*Id.* at 7.)  Defendants request the Court strike the expert opinion because it is "not based on concluded science." (*Id.* at 8.)

In analyzing the reliability of an expert's testimony, the Court considers a number of factors including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. However, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. "[F]ar from requiring trial judges to mechanically apply the *Daubert* factors . . . judges are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho,* 526 U.S. at 150–52).

Dr. Wolf opines the dietary adequate intake of biotin is between 30 to 35 mcg/day for adults, per the Food and Nutrition Board of the Institute of Medicine. (Wolf Report ¶ 21.)[5]  The Western diet consists of between 35 to 75 mcg of biotin per day. (*Id.*)[6]  Therefore, large doses of biotin are unnecessary because one's daily, natural consumption of biotin is adequate without supplementation. (*Id.*)  He opines that even people exhibiting hair loss may not benefit from biotin, because these people are "perfectly able to produce adequate amounts of free biotin to activate the finite number of carboxylases through their diets and recycling." (*Id.* ¶ 24.)

Indeed, Dr. Wolf somewhat argues a negative, i.e. that there is evidence to support the contention that one <u>does not</u> need any more biotin, thus one does not need and cannot benefit from Defendants' Products.  There is no question that Dr. Wolf

---

[5] In support, Dr. Wolf cites: Institute of Medicine (US) Standing Committee of the Scientific Evaluation of Dietary Reference Intakes and its Panel on Folate Dietary Reference Intakes of Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Panthothenic Acid, Biotin, and Choline., National Academy Press (US), Washington, D.C., 1998. (Wolf Report p. 17.)

[6] In support, Dr. Wolf cites: D.M. Mock Biotin. in: A. C. Ross, B. Calballero, R. J. Cousins, K. L. Tucker, and T. R. Ziegler (Eds.) Modern Nutrition in Health and Disease, Lippincott Williams and Wilkins, Baltimore, MD, 2014, pp. 390-398. (Wolf Report p. 17.)

does not present, for example, studies where a person took large doses of biotin and did not benefit. Dr. Wolf opines there is no need for such studies because "the science regarding supplemental biotin, including mega-dose biotin, is so well-developed that it would be a waste of time to research this question." (Wolf Opp'n 1 (citing Dr. Wolf's rebuttal report).) The Court's function is not to determine the truth of Dr. Wolf's opinion but is to serve as a "gatekeeper" to prevent "junk science" from being admitted. *Ellis*, 657 F.3d at 982; *Primiano*, 598 F.3d at 564. The Court finds Dr. Wolf has presented evidence to support his opinion by producing cited data that one only needs a finite amount of biotin and that the need is met by one's daily diet. The plausible deduction that any further biotin, such as that in Defendants' Products, is thus unnecessary is based on cited and supported principles. Therefore, the Court finds that Defendants' criticism of Dr. Wolf's opinion goes to the weight as opposed to the admissibility. The Court **DENIES** Defendants' Motion to Strike the opinions and testimony of Dr. Wolf.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motions to Strike. (ECF Nos. 65, 66.)

**IT IS SO ORDERED.**

**DATED: March 25, 2019**

Hon. Cynthia Bashant
United States District Judge