# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ALVAREZ, individually and on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NBTY, INC., *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 17-cv-00567-BAS-BGS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 51]** |

　　Plaintiff Rosa Alvarez brings an individual and class complaint against Defendants NBTY, Inc. and Nature's Bounty, Inc. Plaintiff alleges Defendants have violated California's unfair competition law ("UCL"); and Consumers Legal Remedies Act ("CLRA"). Defendants moved for summary judgment on all of Plaintiff's claims. ("MSJ," ECF No. 51.) Plaintiff has filed a response in opposition to the Motion, ("Opp'n," ECF No. 67), and Defendants filed a reply in support of the Motion. ("Reply," ECF No. 76). For the foregoing reasons the Court **DENIES** Defendants' Motion for Summary Judgment.

## I.　BACKGROUND

　　Defendants manufacture, market, sell, and distribute biotin supplements under

the Nature's Bounty brand. (Second Amended Complaint, "SAC," ECF No. 38, ¶ 1.) The products at issue here are: Biotin 5000 mcg, SUPER POTENCY Biotin 5000 mcg, QUICK DISSOLVE Biotin 5000 mcg, Biotin 10,000 mcg rapid release softgels, and Biotin 10,000 mcg HEALTH & BEAUTY rapid release liquid softgels (hereinafter, "the Products"). (*Id.*) The Products' labels state the Products "Support[] Healthy Hair, Skin, and Nails" and provide "Energy Support." (*Id.* ¶ 20.)

In approximately 2014, Plaintiff Rosa Alvarez's hair began falling out. ("Alvarez Depo.," Exhibit B of ECF No. 51-2, at 54:5–12.) Plaintiff went to a dermatologist, who informed her she had alopecia, but told her not to worry and that her hair would grow back. (*Id.* at 55:14–21.) The dermatologist suggested laser treatment, but Plaintiff was not interested. (*Id.* at 60:3–11.) The dermatologist did not recommend any supplements. Also around this time, Plaintiff went to her regular nail salon for a manicure. The nail technician told her there was a supplement on the market that helps with hair and nails. (*Id.* at 66:3–15.) The nail technician took out his bottle of biotin, showed it to Plaintiff and others, and recommended taking the supplement in softgel form. (*Id.* at 68:4–15.) Plaintiff was suffering from hair loss at the time and the thought of "great hair" made her interested in biotin. (*Id.* at 69:8–14.) Plaintiff then went to Bed Bath & Beyond and purchased Defendants' 10,000 mcg HEALTH & BEAUTY rapid release liquid softgels biotin product. (*Id.*; SAC ¶ 15). She took biotin for a few years, purchasing a new bottle of supplements "religiously" so that she would never run out. (Alvarez Depo. at 20:23–21:1.)

Plaintiff states she purchased the Product "in reliance on Defendants' health benefit representations." (SAC ¶ 15.) She claims these representations are false, misleading, and reasonably likely to deceive the public. In sum, Plaintiff claims Defendants' representations are false because the supplements do not support healthy hair, skin, and nails. (*Id.* ¶ 9.) "The human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin. Once there is sufficient biotin in the body,

saturation occurs and the body just does not use this surplus biotin." (*Id.* ¶ 3.) The average person ingests more than enough biotin from his or her normal daily diet. (*Id.*) "Thus, biotin is not a 'more is better' substance, nor is more biotin needed from supplementation to complete these daily enzymatic functions." (*Id.* ¶ 5.) "[O]nce one consumes a sufficient amount of biotin, which is easily met by the general population in their everyday diets, the remainder becomes functionally superfluous and does not convey any additional health benefits." (*Id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary

judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (citing *Anderson*, 477 U.S. at 242, 252)). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Such admissions may be presented in testimony of a party's own witnesses through declarations. *See* Fed. R. Civ. Pro. 56(c)(4).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. ANALYSIS

#### A. Standing

Defendants argue Plaintiff has no standing to bring her UCL and CLRA claims. Defendants' argument is two-fold: (1) Plaintiff did not rely on the Products' labels; and (2) Plaintiff did not suffer damages.

##### 1. Reliance

In addition to Article III standing, named plaintiffs in a class action must establish standing to bring the UCL and CLRA claims. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). To have standing under the UCL or CLRA, the named plaintiff must demonstrate actual reliance. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (2009). The plaintiff must actually rely on the allegedly false or

misleading statements prior to purchasing the product. *Id.* The plaintiff is required to set forth "specific facts" in support of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This means the plaintiff "must point to specific facts" indicating she "actually saw" the misrepresentations "and that those misrepresentations were 'substantial factor[s]'" in her decision to purchase the product. *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1020 (N.D. Cal. 2013) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)).

Here, it is clear that the first and primary reason why Plaintiff purchased the Product is because her nail technician recommended biotin. (*See* Alvarez Depo. at 66:3–6.) She had never heard of biotin before the nail technician mentioned a vitamin that was good for nails and hair. (*Id.* at 67:19–21.) Plaintiff then went to Bed Bath & Beyond, intending to look for biotin. (*Id.* at 108:22–109:10.) Plaintiff saw Defendants' Products along with other brands of biotin. (*Id.* at 109:18–21.) Plaintiff testified the packaging on Defendants' Products was "more attention-getting . . . more attractive, more appealing" than others. (*Id.* at 109:22–110:2.) While other brands were less expensive, Defendants' Products were more appealing. (*Id.* at 110:23–25.) Of course, before looking at the labels of the bottles, Plaintiff had already heard that biotin supports hair, skin, and nails. (*Id.* at 113:4–8.) The nail technician had also recommended pills in softgel form because they were easier to swallow, and Defendants offered biotin in softgel form. (*Id.* at 113:14–19.) Many biotin products were advertised featuring "hair, skin, and nails" on the front, but Plaintiff preferred Defendants' Product because of the softgel option and because of the appealing label. (*Id.* at 116:14–19.)

The evidence shows that the label on Defendants' Products advertising that the Products support hair, skin, and nails was not the only reason Plaintiff chose Defendants' Product over others. However, if the Product had not advertised a benefit to hair, skin, and nails, it is likely Plaintiff would have chosen another brand. (*See id.* at 105:21-106:4 (Plaintiff testified the words on the front of the package

"prompted" her to buy the Product).) Plaintiff testified did see the Product label (i.e. the alleged misrepresentation) and found it appealing. (*Id.* at 109:22–110:2.) The label was therefore one reason why Plaintiff bought Defendants' Product. There is therefore a genuine dispute of material fact as to whether the label was a substantial factor in her decision to purchase the Product.

### 2. Damages

Defendants argue Plaintiff was satisfied with the Product because she purchased it multiple times and her hair grew back. (*See* Alvarez Depo. at 127:1–10 (stating her alopecia was cured during the year and a half to two years that she took biotin, but she does not know if it was the result of the biotin).) Defendants therefore argue Plaintiff has no standing to bring her claim because she incurred no damages.

In *Hovsepian v. Apple, Inc.*, the court determined that class members "who have not experienced any problems" with the class products "have no injury and no standing to sue." No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009); *see also Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (determining members who derived benefit from the product and "are satisfied users" have no injury and no standing to sue). *Hovespian* and *Moheb*, like the present case, also involved false advertising claims. The courts in those cases, however, provided little analysis supporting their finding of no standing, nor did they define what constituted an "injury in fact" for standing purposes. In contrast, other courts have held that standing is not negated in situations like the present case simply because the purchaser was satisfied with the product. In *McCrary v. Elations Co.*, No. EDCV 13-242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014), the court found "unpersuasive" the defendant's "concern that some putative class members were happy with [the product] and thus were uninjured." *Id.* at *14. The court cited *In re Google AdWords Litigation*, No. 5:08–CV–3369, 2012 WL 28068, at *10 (N.D. Cal.

Jan. 5, 2012), which held "the requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." The court in *McCrary* also cited *Ries v. Arizona Beverages USA*, 287 F.R.D. 523 (N.D. Cal. 2012), which held:

> The focus of the UCL and FAL is on the actions of the defendants, not on the subjective state of mind of the class members. All of the proposed class members would have purchased the product bearing the alleged misrepresentations. Such a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing.

*Ries*, 287 F.R.D. at 536 (internal citation omitted); *see also Conde v. Sensa*, No. 14-cv-51-JLS-WVG, 2018 WL 4287056, at *3 (S.D. Cal. Sept. 10, 2018) (finding a plaintiff had standing to bring false advertising claims even though she testified she was satisfied with the product).

The Court agrees with the analysis in *McCrary, Google AdWords*, and *Ries*. The fact that Plaintiff continued to purchase the Product over a period of two years and may have been satisfied with the Product does not strip her of standing. Satisfaction (or lack thereof) is not the focus of the "injury" requirement for a false advertising claim: A product can be falsely advertised even if one continues to use it and believes in its effectiveness time and time again. Plaintiff purchased the Product after viewing the advertisements and has standing to claim that the advertisements were false and that she was damaged thereby.

The Court **DENIES** Defendants' MSJ on the basis of lack of standing.

### B. False or Misleading Labeling

Turning to the merits of the MSJ, Defendants argue Plaintiff cannot prove that the Products' labels are false or misleading.[1]

---

[1] Defendants first argue the Products' labels make no statement at all. (Mot. 14.) This is inaccurate; the Products' labels represent that the Products "Support[] Healthy Hair, Skin, and Nails." (*See* SAC ¶ 1.) Plaintiff challenges this statement as false, and the Court analyzes the

In analyzing the Parties' arguments, the important distinction is between biotin as a nutrient and biotin in large doses as in Defendants' Products (i.e. 5000 mcg and 10,000 mcg). (*See* SAC ¶ 1.) Plaintiff's expert Dr. Wolf agrees that "the nutrient biotin plays a cellular and biochemical role in the support of healthy hair, skin, nails and energy" and that there is scientific evidence to demonstrate that "biotin as a nutrient supports healthy hair, skin, nails, and energy." (Wolf Depo, ECF No. 69-2, at 53:9–17.) But Dr. Wolf opines that Defendants' Products (i.e. "mega-doses" of biotin) "do not provide any benefits to the general population and, thus, they do not help support healthy hair, skin and nails, or energy or energy production" and are "superfluous and unnecessary." ("Wolf Report," Exhibit D of ECF No. 51-2, at ¶ 11.) Due to "the metabolic characteristics of biotin, its availability from most food sources, and the finite needs of the human body for biotin," one has no need for any biotin supplements, and Defendants' Products are "worthless." (*Id.* ¶ 12.) Dr. Wolf even disagrees that some "marginally deficient" people might need additional biotin and Plaintiff argues "the well-settled scientific facts . . . are that marginal deficiency has never been proven to exist in anyone." (Opp'n 4.)[2] Therefore, Plaintiff acknowledges that biotin the nutrient "supports" healthy hair, skin, and nails, but argues Defendants' Products (i.e. such large doses of biotin) provide no "support" to healthy hair, skin, and nails, for 'the general population.'" (MSJ 14 (quoting Wolf Report ¶ 22–26).) Thus, Plaintiff alleges Defendants' Products are falsely labeled.

Defendants make a point in their MSJ not to present the opinions of their expert, Dr. Mock, so as not to create a "battle of the experts" and instead focus their

---

statement.

[2] Plaintiff asserts that "both parties' experts agree" that even those with marginal deficiencies can correct their level of biotin "through changes in diet or 0-30 mcg of supplemental biotin – but there is absolutely no need for 5000 or 10,000 mcg of supplemental biotin." (Opp'n 6.) But this is not true, as Defendants' expert Dr. Mock opines that biotin supplementation benefits individuals with marginal biotin deficiency and does not specify the amount of supplementation needed. (Mock Report, ECF No. 54-10, ¶ 109.)

briefing on the argument that Plaintiffs' evidence is insufficient on its own to demonstrate a triable issue of fact. (*See* Mot. 8; Reply 13.)

### 1. Legal Standard

Both Parties agree that Defendants' Products make a "structure/function claim." A structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function." 21 U.S.C. § 343(r)(6). Per the Food and Drug Administration ("FDA"), "structure/function claims may use general terms such as 'strengthen,' 'improve,' and 'protect,' as long as the claims 'do not suggest disease prevention or treatment.'" *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) (quoting Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000–01, 1028 (Jan. 6, 2000)). Structure/function claims must meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the FDA has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6).[3]

In an action for false advertising of a structure/function claim under the UCL

---

[3] The Nutrition Labeling and Education Act ("NLEA") preempts any state law that establishes "any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. § 343-1(a)(5). Defendants here do not argue Plaintiff's UCL and CLRA claims are preempted, so the Court does not opine on the issue but notes there are courts that have found no preemption in similar cases. *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1101 (S.D. Cal. 2015) (finding the plaintiff's allegation that the product is "false and misleading because [the product] does not and cannot provide the promised benefits" is not preempted "because state false-advertising laws are consistent with the FDCA's prohibition on false and misleading labeling"); *see also Gallagher*, 2015 WL 1056480, at *7 ("Not preempted would be a claim that 'supports heart health' as a structure/function claim is a false and misleading statement contrary to scientific studies.").

and CLRA, the plaintiff "bears the burden of proving the defendant's advertising claim is false or misleading." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1342 (2003). Private litigants must prove falsity or misrepresentation for their UCL and CLRA claims. *See Kwan v. SanMedica Int'l, LLC*, 854 F.3d 1088, 1095–96 (9th Cir. 2017). Proving a "lack of substantiation" is insufficient as "[p]rivate plaintiffs are not authorized to demand substantiation for advertising claims." *King Bio*, 107 Cal. App. 4th at 1345. Plaintiffs must establish the claims are false or misleading by citing to "testing, scientific literature, or anecdotal evidence." *Kwan*, 854 F.3d at 1096–98 (quoting *King Bio*, 107 Cal. App. 4th at 1348).[4] The standard in CLRA and UCL actions is whether "members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002).

### 2. Analysis

The first issue is whether Plaintiff is improperly making a lack of substantiation claim. A plaintiff makes a lack of substantiation claim if she argues that there is no evidence to support a defendant's claim. But if the plaintiff points to scientific evidence that conflicts with the claim, this is an action for false or misleading advertising. *See Fraker v. Bayer Corp.*, No. CVF08-1564 AWI GSA, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009). While Plaintiff, through Dr. Wolf, does point to a lack of certain evidence supporting Defendants' claims,[5] Plaintiff

---

[4] Defendants argue that Plaintiffs must prove scientific literature shows that benefits are "categorically impossible to achieve." (MSJ 13 (citing *Kwan*, 854 F.3d at 1092).) That is not the holding from *Kwan*.

[5] In her operative Complaint, Plaintiff cites the 2000 Institute of Medicine Report from the National Academy of Sciences on Dietary Reference Intakes for Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Pantothenic Acid, Biotin, and Cholin, which states: "No definitive studies demonstrate evidence of biotin deficiency in normal individuals in any group resulting from inadequate intakes." (SAC ¶ 8.) Dr. Wolf also testified that he has "no evidence" that the general population "need[s] pharmacologic doses of biotin" and is not "aware of any studies or tests on the defendants' biotin products that are at issue in this case." (Wolf Depo. 78:1–7; 115:12–116:3.) Dr. Wolf concludes that no studies "exist[] for megadose biotin and Dr. Mock cites no such studies such that my opinions and the science upon which they are based are the established science

also produces affirmative evidence that supports her argument that the labels are false or misleading. Dr. Wolf presents a study that the average person needs between 30 to 35 mcg/day of biotin, per the Food and Nutrition Board of the Institute of Medicine. (Wolf Report ¶ 21.)[6] Dr. Wolf also presents a study that the Western diet consists of between 35 to 75 mcg of biotin per day. (*Id.*)[7] Plaintiff argues this proves that Defendants' advertising is false because Defendants' Products (i.e. extra biotin) cannot benefit or support anyone. Although Plaintiff does not have direct evidence or studies that show the Products do not work as advertised, Plaintiff's argument is that the evidence shows the Products are worthless. *Cf. Johns v. Bayer Corp.*, No. 9-cv-1935-AJB (DHB), 2013 WL 1498965, at *48 (S.D. Cal. Apr. 10, 2013) (granting summary judgment for the defendant where the plaintiff had set forth no "affirmative scientific evidence" that the labeling was false and argued there were "no studies" supporting the defendant's claims). Thus the issue becomes whether Plaintiff can prove the Products' labels are false or misleading.

Recently, the Ninth Circuit opined on the level of proof for UCL and CLRA claims. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 993 (9th Cir. 2018). The court held "[a] plaintiff need not produce affirmative evidence, [and] also fatally undermine the defendant's evidence," to defeat summary judgment. "If the plaintiff's evidence suggests that the products do not work as advertised and the defendant's evidence suggests the opposite, there is a genuine dispute of material fact for the fact-finder to decide." *Id.*

"[V]iolations of the UCL . . . and CLRA are evaluated from the vantage point

---

regarding biotin and biotin supplements." (Wolf Report ¶ 18.)
[6] In support, Dr. Wolf cites: Institute of Medicine (US) Standing Committee of the Scientific Evaluation of Dietary Reference Intakes and its Panel on Folate Dietary Reference Intakes of Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Panthothenic Acid, Biotin, and Choline., National Academy Press (US), Washington, D.C., 1998. (Wolf Report p. 17.)
[7] In support, Dr. Wolf cites: D.M. Mock Biotin. in: A. C. Ross, B. Calballero, R. J. Cousins, K. L. Tucker, and T. R. Ziegler (Eds.) Modern Nutrition in Health and Disease, Lippincott Williams and Wilkins, Baltimore, MD, 2014, pp. 390-398. (Wolf Report p. 17.)

of a 'reasonable consumer.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). The plaintiff must "show that members of the public are likely to be deceived." *Id.* (citation and quotations omitted). "Likely to deceive" means "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Instead, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

Defendants are correct that their Products do not assert a claim such as "a mega-dose of biotin is necessary to help skin, nails, and hair" or that any person "needs" or "requires" "a mega-dose" of biotin in his or her diet. The Products do not assert how much biotin a person needs, only that the Products "support" skin, hair, and nails. Or, arguably, the Products claim that *biotin in general* "supports" skin, hair, and nails (not necessarily that a mega-dose provides such benefits).[8] The Products also do not claim who would benefit from biotin (i.e. marginally deficient

---

[8] The Court includes a picture of one of Defendants' Products to illustrate the generality of the label:



Courts may take judicial notice of images of product packaging. *See, e.g., Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 2d 1091, 1099 (S.D. Cal. 2015) (taking judicial notice of product packaging); *Rooney v. Cumberland Packing Corp.*, No. 12-cv-33-H (DHB), 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012) (taking notice of reproductions of the panels of two boxes of Sugar in the Raw). Thus the Court takes judicial notice of the packaging of Defendants' Product.

people or the general population). Plaintiff agrees that "biotin *the nutrient* we get from our diet provides the represented benefits" but argue Defendants' Products provide no benefits to the general population.⁹ (Opp'n 7, 17; *see also* "Wolf Rebuttal Report," ECF No. 51-2, ¶ 7 (Dr. Wolf admits "biotin is a nutrient that is essential to health and if you do not get any or get very little biotin from your diet over a lengthy period of time (frank biotin deficiency), you will likely suffer hair and skin, and possibly nail problems").)

The Court finds that Plaintiff has produced at least "debatable evidence demonstrating that the scientific consensus is on [her] side." *See Dachauer v. NBTY, Inc.*, No. 16-cv-216-VC, 2017 WL 2304209, at *2 (N.D. Cal. May 26, 2017) (citing *In re GNC Corp.*, 789 F.3d 505, 515 (4th Cir. 2015)). A jury could conclude that a reasonable consumer would find Defendants' Products misleading. Drawing all inferences from the underlying facts in the light most favorable to the Plaintiff, the Court finds there is a disputed issue as to whether reasonable consumer could believe that the high doses of biotin in Defendants' Products support the consumer's hair, skin, and nails, when, as Plaintiff presents, the biotin in one's diet sufficiently supports hair, skin, and nails, and one does not need biotin from Defendants' Products for such support. This creates a disputed issue of material fact. *See Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008) (holding "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides" (internal quotations and citation removed)).¹⁰

---

⁹ As noted, this conclusion applies to the general population and Dr. Wolf agrees that the large doses of biotin in Defendants' products "benefit an infinitesimally small number of persons who have one of three inherited metabolic, biotin-responsive disorders." (Wolf Report ¶ 12.)

¹⁰ Although Plaintiff does not make this argument, the Court further notes the FDA website indicates it is possible that "biotin can significantly interfere with certain lab tests and cause incorrect test results which may go undetected." *See* https://www.fda.gov/medical-devices/safety-communications/fda-warns-biotin-may-interfere-lab-tests-fda-safety-communication (last visited May 21, 2019). "The FDA is aware of people taking high levels of biotin that would interfere with lab tests." (*Id.*) This possible interference could be deemed a "material fact 'with respect to

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment.

**DATED: May 22, 2019**

Hon. Cynthia Bashant
United States District Judge

---

consequences that may result from use of the [supplement].'" *See Dachauer*, 913 F.3d at 849 (quoting *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 96 (1st Cir. 2016)). A product is misleading if its label does not reveal a material fact. *Id.* It is undisputed that the Products here do not disclose this FDA warning regarding high biotin levels. Whether this issue makes Defendants' Products misleading creates another issue of material fact.